IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JAMES C. BAILY,**

        **Plaintiff,**

  **vs.**
                                        Civil Action 2:13-cv-344
                                        Judge Marbley
                                        Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

<u>**REPORT AND RECOMMENDATION**</u>

**I. Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court for consideration of *Plaintiff's, James C. Baily, Statement of Errors* ("*Statement of Errors*"), Doc. No. 15, and the Commissioner's *Opposition to Plaintiff's Statement of Errors*, Doc. No. 22. Plaintiff has not filed a reply.

Plaintiff James Baily filed his application for benefits on January 20, 2009. *PAGEID* 271.[1] The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was initially held on March 31, 2011, following which an administrative law judge concluded that plaintiff was not disabled. *PAGEID* 154-165. Upon plaintiff's request for review, the

---

[1] Plaintiff initially alleged a disability onset date of April 11, 1979, but later amended that date to January 20, 2009. *PAGEID* 285.

1

Appeals Council remanded the case for further consideration. *PAGEID* 172-74.

A second administrative hearing was held before a different administrative law judge on February 2, 2012, at which plaintiff, represented by counsel, appeared and testified, as did George Coleman, who testified as a vocational expert. *PAGEID* 115. In a decision dated March 6, 2012, that administrative law judge concluded that plaintiff was not disabled from January 20, 2009, through the date of the administrative decision. *PAGEID* 79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 15, 2013. *PAGEID* 52.

Plaintiff was 32 years of age on the date of the administrative decision. *See PAGEID* 79, 271. He has a high school education, is able to communicate in English, and has no past relevant work. *PAGEID* 78. Plaintiff has not engaged in substantial gainful activity since January 20, 2009, his alleged date of onset of disability. *PAGEID* 67.

**II. Evidence of Record**

Plaintiff's school records indicate that, in 1986, at the age of six, plaintiff achieved a full scale IQ score of 84. *PAGEID* 371. In 1989, at the age of 10, plaintiff achieved a verbal IQ score of 68, a performance IQ score of 112, and a full scale IQ score of 87. *Id*. In 1992, when plaintiff was 13 years of age, testing showed a verbal IQ score of 73, a performance IQ score of 99, and a full scale IQ score of 84. Plaintiff's school records indicate that he was assigned to regular education classes from October 5, 1998 through October 5, 1999, but that he had an IEP for

a specific learning disability and received services related to speech. *PAGEID* 329.

Plaintiff graduated from high school in June 1999 with a grade point average of 1.228 and a class rank of 117 out of 118 students. *PAGEID* 376. Plaintiff passed no portion of the Ninth Grade Proficiency Test. *PAGEID* 377.

On February 1, 2008, Lee Howard, Ph.D., performed a consultative psychological evaluation of the plaintiff at the request of the state agency. *PAGEID* 465-75. Plaintiff presented with complaints of (1) "Stressed out, crying[,]" (2) "Hard to read, comprehend things[,]" and (3) "Sometimes I don't want to be bothered by nobody." *PAGEID* 466. Plaintiff also reported to be depressed "once a month" for "an hour or so." *Id*. Plaintiff was not under the care of a physician, nor was he medicated at the time of the exam. *Id*. His speech was reported as "slow, soft, and with a mumbling quality and only understandable 80-85% of the time." *PAGEID* 472. On the WAIS-III, plaintiff achieved a verbal IQ score of 61, a performance IQ score of 57, and a full scale IQ score of 55. On the WMS-III, plaintiff achieved an average MQ score of 52. *PAGEID* 470-71, 474. Dr. Howard noted that plaintiff "put[] forth an adequate effort during test taking, but seems to be intimindated by the academic-like test setting and this may have resulted in some mild under performance tendency." *PAGEID* 471.

Dr. Howard assigned a global assessment of functioning score ("GAF") of 50[2] and diagnosed an expressive language disorder and borderline

---

2

The GAF scale is a method of considering psychological, social, and

intellectual functioning versus mild mental retardation. *Id*. Dr. Howard opined that plaintiff was moderately impaired in his ability to relate to others, including coworkers and supervisors, and severely impaired in his ability to (1) understand, remember, and follow instructions, (2) maintain attention, concentration, persistence, and pace to perform routine tasks, and (3) withstand the stress and pressures associated with day-to-day work activity. *PAGEID* 472. Dr. Howard further opined that plaintiff does not have the mental ability to manage his funds in his own best interest. *PAGEID* 473.

Netcare Corporation performed a mental health assessment on February 20, 2008. *PAGEID* 476-82. Plaintiff reported difficulty with concentration and experiencing daily symptoms of depression for several years, including sleep disturbance, depressed mood, and inattention/hyperactivity. *PAGEID* 476-77. Plaintiff could not find a job because of his illiteracy. *PAGEID* 476. Plaintiff also reported seeing all but one of his children regularly and spending time with a group of friends. *PAGEID* 477. Plaintiff was assigned a GAF of 53 and diagnosed with major depressive disorder, recurrent, moderate and attention-deficit/hyperactivity disorder NOS, "as evidenced by client's report of history and symptoms." *PAGEID* 479.

---

occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . .

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012).

John L. Tilley, Psy.D., evaluated plaintiff and completed a behavioral health evaluation on October 20, 2008. *PAGEID* 488-99. On the WAIS-III, plaintiff achieved a verbal IQ score of 56, a performance IQ score of 56, and a full scale IQ score of 52. *PAGEID* 492. Dr. Tilley assigned a GAF of 35 and diagnosed plaintiff with moderate mental retardation. *PAGEID* 496. According to Dr. Tilley, plaintiff was moderately limited in his ability to (1) understand and remember very short and simple instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) sustain an ordinary routine without special supervision, (5) make simple work-related decisions, (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) ask simple questions or request assistance, and (8) accept instructions and respond appropriately to criticism from supervisors. *PAGEID* 498. Dr. Tilley also opined that plaintiff was markedly limited in his ability to understand and remember detailed instructions and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and extremely limited in his ability to (1) remember locations and work-like procedures, (2) respond appropriately to changes in the work setting, (3) be aware of normal hazards and take appropriate precautions, (4) travel in unfamiliar places or use public transportation, and (5) set realistic goals or make plans independently of others. *ID*. Dr. Tilley further opined that plaintiff would be unable to manage his personal finances. *PAGEID* 497.

5

Scott Lewis Donaldson, Ph.D., consultatively evaluated plaintiff for the state agency on May 7, 2009. *PAGEID* 578-82. Plaintiff complained that he was unable to work because of "difficulty with reading and understanding things." *PAGEID* 578. He experienced a depressed mood most of the day, a diminished interest in activities, weight loss, insomnia, psychomotor retardation, fatigue, feelings of worthlessness, and a lack of concentration. *PAGEID* 579. Dr. Donaldson assigned a GAF of 50-60 and diagnosed major depressive disorder and generalized anxiety disorder. *PAGEID* 581. Dr. Donaldson opined that plaintiff's

> ability to understand, remember and carry out one- or two- step job instructions may be weak, but not impaired. His ability to perform repetitive tasks does not appear to be lacking; however, his level of motivation may be lacking moderately due to his Axis I diagnoses. His ability to attend to relevant stimuli is likely to be impeded moderately. His interpersonal relationship skills, as well as his ability to relate to supervisors and co-workers, may be limited moderately. His ability to withstand the stress and pressures associated with day-to-day work activity appears to be limited moderately, based upon his Axis I diagnoses.

*PAGEID* 581. Dr. Donaldson further opined that plaintiff "may need assistance managing his day-to-day funds, as well as with additional long-range financial affairs." *Id*.

Robelyn Marlow, Ph.D., reviewed the record for the state agency and completed a psychiatric review technique form and mental residual functional capacity assessment on June 8, 2009. *PAGEID* 583-600. Dr. Marlow's report suggested that plaintiff's impairments did not meet or equal a listed impairment. *PAGEID* 583. However, Dr. Marlow made no mention of the verbal IQ score of 68 that was included in plaintiff's school records. *PAGEID* 599. According to Dr. Marlow, plaintiff had mild

6

restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. *PAGEID* 593. Plaintiff was moderately limited in four areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation; plaintiff was not significantly limited or there was no evidence of a limitation in the remaining 16 categories of functioning. *PAGEID* 597-98. Dr. Marlow opined that plaintiff "is capable of simple, repetitive work in a static environment with intermittent, superficial interactions with others, no strict production or time quotas." *PAGEID* 600. Douglas Pawlarczyk, Ph.D., reviewed the record and, on November 30, 2009, affirmed Dr. Marlow's opinion. *PAGEID* 611.

Plaintiff began treatment with Liberato Basobas, M.D., and Judy Cohen, M.S.Q.M.H.S., of Columbus Area, Inc., in April 2010. *PAGEID* 601-10. Dr. Basobas saw plaintiff at least 18 times and Ms. Cohen saw plaintiff approximately seven times between April 2010 and October 2011. *PAGEID* 601-07, 613-21, 628-29, 642-49. Ms. Cohen and Dr. Basobas completed a mental impairment questionnaire on December 23, 2010, and diagnosed a major depressive disorder, recurrent with psychotic features; mild mental retardation; and dependent personality disorder. *PAGEID* 622-27. The providers also indicated that plaintiff has experienced a pervasive loss of interest in all activities, decreased energy, flat affect, impairment in impulse control, difficulty thinking or concentrating, apprehensive expectations, emotional withdrawal or isolation, sleep disturbance, and loss of intellectual ability of 15 IQ points or more. *PAGEID* 623.

7

Plaintiff has difficulty focusing and isolates himself due to his medication. *PAGEID* 622. According to Ms. Cohen and Dr. Basobas, plaintiff is unable to meet competitive standards with regard to his mental ability to (1) carry out very short and simple instructions, (2) maintain attention for a two hour segment, (3) sustain an ordinary routine without special supervision, (4) make simple work related decisions, (5) ask simple questions or request assistance, (6) understand and remember detailed instructions, (7) carry out detailed instructions, (8) set realistic goals or make plans independently of others, (9) deal with the stress of skilled and unskilled work. He cannot interact appropriately with the general public or use public transportation because he is "mildly retarded." *PAGEID* 624-25. Ms. Cohen and Dr. Basobas further opined that plaintiff is moderately restricted in his activities of daily living and has marked difficulty in maintaining social functioning, and in maintaining concentration, persistence, or pace. *Id*. Plaintiff does not interact with anyone, socialize, or do chores, but he is able to dress and care for himself. *PAGEID* 622.

On December 6, 2011, Dr. Basobas reaffirmed his December 23, 2010 opinion. *PAGEID* 685.

**III. February 2, 2012 Administrative Hearing**

Plaintiff testified at the February 2, 2012 administrative hearing that he lives with his mother. *PAGEID* 122, 133. He can cook macaroni but cannot cook food that requires a recipe; he does no household chores and he is "sometimes" able to shower or bathe regularly without being reminded. He relies on his mother to help him with medication. *PAGEID* 133-35.

8

Plaintiff previously had a driver's license which was suspended due to "child support." *PAGEID* 122.  Plaintiff has eight children, whom he does not see. *PAGEID* 128.  Plaintiff has never used alcohol or street drugs. *PAGEID* 123, 137.

During a normal day, plaintiff stays at home and thinks; he does not watch television, but he watches Ohio State. He sometimes listens to music. *PAGEID* 128.  Plaintiff no longer goes out with his friends because he "wasn't able to cope with them." *PAGEID* 129.  He spends time with his uncle and a friend, who brought him to the administrative hearing. *PAGEID* 135-36.

Plaintiff testified that he was assigned to learning disabled classes throughout school. He sometimes got into fights. *PAGEID* 131.  Plaintiff tried to play basketball in high school and he still plays basketball by himself on occasion. *PAGEID* 138.  Plaintiff was in prison in 2002 for "about a year," but he was not offered a job or classes while there. *PAGEID* 123.  Prior to the administrative hearing, a counselor signed plaintiff up for an adult literacy group at a church, which plaintiff attended. *PAGEID* 139.

Plaintiff's earnings record includes self-employment income in 2003, 2005, and 2008, when he worked for his father's home remodeling business. *PAGEID* 124.  Plaintiff sometimes made mistakes and suffered injuries on the job. *PAGEID* 132.  After his father died, plaintiff was unable to maintain the business. *PAGEID* 125.

Plaintiff testified that he is unable to work because he "can't read the paper and stuff like that," has memory problems, and "sometimes" hears

9

voices.  *PAGEID* 129-31.  Plaintiff also testified that he has problems working with people, who judge him for being different.  *PAGEID* 129-31, 136.

The vocational expert testified that plaintiff has no prior relevant work.  *PAGEID* 140.  Asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge,  *PAGEID* 141-42,  the vocational expert responded that such an individual could perform such jobs as a laundry aide (approximately 865,960 jobs nationally and 4,720 regionally), machine operator (approximately 115,800 jobs nationally and 505 regionally), and bench press operator (approximately 41,100 jobs nationally and 317 regionally).  *Id*.

**IV. March 6, 2012 Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of "borderline intellectual functioning, depression; generalized anxiety disorder; degenerative disc disease of the lumbar spine; and obesity."  *PAGEID* 67.  The administrative law judge also found that plaintiff's impairments, whether considered singly or in combination, neither meet nor equal a listed impairment, including Listings 12.04 and 12.05.  *PAGEID* 68-70.

With regard to Listing 12.04, the administrative law judge found that the requirements of paragraphs B and C are not met.  *Id*.  As to the paragraph B criteria of Listing 12.04 (which also applies to the paragraph D criteria of Listing 12.05), the administrative law judge determined that plaintiff has "a mild restriction in activities of daily living; [] mild

10

difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration." *PAGEID* 69. The administrative law judge found that the paragraph B criteria are not satisfied because "the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." *Id*. The administrative law judge found that "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id*.

With regard to Listing 12.05, the administrative law judge found that the requirements of paragraphs A, B, C, and D are not met. *PAGEID* 68-70. As to the paragraph B criteria, the administrative law judge determined that the requirements "are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less." *PAGEID* 70. The administrative law judge noted that February 2008 cognitive testing revealed a full scale IQ score of 55 and October 2008 testing revealed a full scale IQ score of 52, but he found that the tests did not represent a valid measure of plaintiff's cognitive functioning. *Id*.

> [T]he record fails to establish the onset of mild mental retardation with maladaptive behavior prior to the age of 22. The records do show a Verbal IQ score of 68, when the claimant was 10 years old; however, his other scores were significantly higher, thereby indicating a learning disability and not true mental retardation. Further, prior to age 22, there is no other scores that were *validly* lower than 60. The more recent IQ scores do not appear to be valid in light of the claimant's earlier history of significantly higher scores. The claimant demonstrated a Full Scale IQ test score of 84 in 1986 and 1992. Further, he demonstrated a Full Scale IQ score of 87 in 1989. I find that the claimant's more recent diminished IQ scores are not valid, as both consultative examiners indicated poor effort and underperformance. His lack of cooperation reduces the

> probative value of those test results, rendering the scores invalid.

*Id*. (emphasis in original).  As to the paragraph C criteria, the administrative law judge found that the requirements are not met "because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id*.

The administrative law judge went on to find that plaintiff has the RFC to

> perform light work as defined in 20 CFR 416.967(b) except he can do no more than occasional crawling or kneeling and is precluded from climbing ladders, ropes or scaffolds.  He is limited to simple repetitive tasks in a relatively static environment characterized by infrequent changes in duties and processes; where there is no more than superficial contact with others, including the public, and no strict time or production standards or fast-paced work.

*PAGEID* 68-70.  The administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the national economy despite his lessened capacity.  *PAGEID* 78-79.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from January 20, 2009, through the date of the administrative law judge's decision.  *PAGEID* 79.

**V. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389

(1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

Plaintiff argues, first, that the administrative law judge erred in concluding that plaintiff does not meet the requirements of Listing 12.05C. *Statement of Errors*, pp. 9-15. Specifically, plaintiff argues that the administrative law judge erred in rejecting the IQ scores reported by Drs. Howard and Tilley, who administered IQ tests in February 2008 and October 2008, respectively, because those mental health experts did not conclude that plaintiff's scores were invalid. *Id*. at pp. 11-12. Plaintiff also argues that the administrative law judge erred in finding that "the record fails to establish the onset of mild mental retardation with maladaptive

13

behavior prior to the age of 22," and in failing to find that plaintiff has a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Statement of Errors*, pp. 11-13.

Listing 12.05 requires, under appropriate circumstances, a finding of disability based on the claimant's intellectual disability:[3]

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . . (C) [the claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. A claimant must establish three elements in order to satisfy Listing 12.05C: that he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) that he has a "valid verbal, performance, or full scale IQ of 60 through 70," and (3) that he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. *See also Foster v. Harris*, 279 F.3d 348, 354–55 (6th Cir. 2001). Under the Social Security regulations, "loss of adaptive functioning" is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration,

---

[3] Prior to September 3, 2013, Listing 12.05 referred to "mental retardation," rather than to "intellectual disability." The administrative law judge and the parties refer to "mental retardation."

14

persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.00(C)(4). *See also West v. Comm'r Social Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills."). Present IQ scores do not alone establish that the claimant suffered subaverage intellectual functioning or deficits in adaptive functioning during the developmental period. "A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491–92 (6th Cir. 2010) (citing *Foster*, 279 F.3d at 354–55).

As discussed *supra*, in order to satisfy Listing 12.05C, the record must include a valid verbal, performance, or full scale IQ score of 60 through 70. Plaintiff points to school records that include a 1989 verbal IQ score of 68. PAGEID 371. The administrative law judge rejected that score as invalid, PAGEID 70, reasoning that the schore "indicat[es] a learning disability and not true mental retardation" because plaintiff's other scores "were significantly higher." *Id*.

Plaintiff's school records indicate that, in 1989, when plaintiff was 10 years of age, plaintiff achieved a verbal IQ score of 68, a performance IQ score of 112, and a full scale IQ score of 87. PAGEID 371. There is, however, no expert evidence supporting the administrative law judge's finding that these scores are representative of a learning disability rather than an intellectual disability. The state agency psychologists who reviewed the record made no mention of this IQ score. It is also not clear why, as the administrative law judge suggests, the

15

mere presence of comparatively higher performance IQ or full scale IQ scores would invalidate a lower verbal IQ score when the listing itself requires only a valid verbal, performance, or full scale IQ score between 60 and 70. Moreover, there is no indication that plaintiff acted in bad faith or was uncooperative during the 1989 testing, nor is there any indication that the administrative law judge considered plaintiff's life skills, daily activities, or prior work experience in invalidating the score. *See Brooks v. Comm'r of Soc. Sec.*, No. 08-cv-2608, 2010 WL 1254323, at *4-5 (N.D. Ohio Mar. 24, 2010) (collecting cases affirming an administrative law judge's invalidation of IQ scores). If the administrative law judge had concerns about the validity of the 1989 verbal IQ score, he had the authority to retain the services of an expert to assist him in interpreting that score. It was error, however, for the administrative law judge to render his own opinion that he was not qualified to make.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further consideration of Listing 12.05C.

Having concluded that the action must be remanded, the Court need not and does not address plaintiff's remaining arguments.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

December 26, 2013                                       *s/Norah McCann King*
                                                          Norah M$^c$Cann King
                                            United States Magistrate Judge